## Henry *et al. versus* Carson.

1. S. and D., married women, owned land, and in 1839 made a deed for it to F., their husbands not joining. D. died in 1845, her husband in 1848. S. died in 1848, her husband in 1851. F. had adverse possession from 1839 till 1864, when the land was sold by the sheriff as his property to H. The heirs of S. and D. brought ejectment in 1866. *Held*, that they had been barred by the Statute of Limitations, at the end of ten years from the death of the husbands respectively.

2. The 4th section of Act of March 26th 1785 (Limitations), examined and construed.

3. If a person is under no disability when his right first accrues, his right of entry or action, and, if he dies, that of his heirs, will be barred by twenty-one years' adverse possession.

4. If a person is under any of the disabilities mentioned in the act when his right first accrues, he or his heirs have ten years after the removal of the disability to make entry or bring ejectment, although twenty-one years may have previously expired.

5. If the ten years after the removal of the disability expire before the twenty-one years, the right of entry or action will not be barred until the expiration of the twenty-one years.

6. If a person under disability when his right first accrues, dies before it has ceased, his heirs have the same time to make entry, &c., as he would have had if he had survived the disability.

7. The heirs of a married woman who dies, leaving her husband, have only the same time to make entry, &c., after the end of the husband's tenancy by the curtesy, as the wife would have had, had she survived the husband, though they may be under disability when their right of entry accrues.

8. Marple *v.* Myers, 2 Jones 122, examined and criticised.

October 30th 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Westmoreland county:* No. 53, to October and November Term 1868.

[Henry *v.* Carson.]

This was an action of ejectment, commenced April 18th 1866, by Nancy Fulton against Frederick Henry, for 220 acres of land in Sewickly township, Westmoreland county. The defendant disclaimed title to 21 acres of the land. Subsequently Thomas G. Hood and others, who were partners trading as Hood, Bonbright & Co., were added as defendants. The plaintiff having afterwards married James Carson, his name was added as a plaintiff.

The whole tract formerly belonged to Alexander Robinson, who by his will, dated November 15th 1836, directed that his farm should ·be divided as nearly equally as might be, and appraised in the manner specified in his will, and that Robert Fulton, who was husband of the testator's daughter Margaret, should have the northern part at the appraisement, and if accepted by him, the executors should convey it to him, and that "any of" his daughters should have the southern part at the appraisement, commencing with the eldest; that the whole proceeds of his real estate, after payment of certain legacies, should be equally divided amongst his four daughters, Elizabeth Duffield, Isabella Shields, Margaret Fulton, and Sarah Robinson. The land was divided and appraised; the northern part containing 117 acres, and the southern part containing 121 acres. The daughters did not accept the southern part, but by deed of mutual release and partition, dated May 25th 1838, 21 acres of it were conveyed to Margaret Fulton in severalty, and the remaining 100 acres to Isabella Shields, Sarah Robinson and Elizabeth Duffield, as tenants in common. On the 26th of May Mrs. Shields, Mrs. Robinson and Mrs. Duffield executed a power of attorney to William Robinson to sell and convey their 100 acres; their husbands, who were living, did not join in the power of attorney. Robert Fulton accepted· the northern part, and it was conveyed to him by the executors July 13th 1838. On the 3d of April 1839, the deed of Mrs. Shields, Mrs. Robinson and Mrs. Duffield, "by their attorney in fact, William Robinson," purporting to convey the 100 acres to Robert Fulton in fee, was executed and delivered. The consideration named in the deed was $2800. For the greater part of the consideration Fulton gave notes to his sisters-in-law; Mrs. Robinson's and Mrs. Shields' were paid to themselves; Mrs. Duffield's was paid to her representative after her death. Mrs. Shields died in 1848, her husband in 1850. She left six children. Mrs. Duffield died in 1845; her husband in 1851; she left five children. Mrs. Robinson is still living; her husband died in 1840. On the 1st of September 1864 Mrs. Robinson and two of the six children of Mrs. Shields conveyed to the plaintiff their interest in the *whole tract* devised by Alexander Robinson. On the 13th of October 1864 three of the five children of Mrs. Duffield conveyed to the plaintiff their interest in the same tract. Robert Fulton's inter-

[Henry v. Carson.]

est in the whole tract was sold by the sheriff to the defendants, Hood, Bonbright & Co., under an execution against him; the sheriff's deed was acknowledged November 16th 1864.

Margaret Fulton by her will, proved February 7th 1866, gave to the plaintiff all her estate, including the 21 acres released to her by her sisters.

On the 18th of April 1866, Robert Fulton conveyed to the plaintiff all his interest in the whole tract.

Robert Fulton had occupied the whole land under the testator till his death, and continued to occupy it up to the sheriff's sale; the defendants have been in possession since.

The court (Buffington, P. J.), after recapitulating the facts, &c., said:—"It therefore follows that the north half must be Robert Fulton's, and the sheriff's sale vested it in defendants; and that the south part vested in the three sisters, Mrs. Duffield, Mrs. Shields and Mrs. Robinson. * * *

"As to Mrs. Duffield and Mrs. Shields' interest, the Statute of Limitations does not apply, and so far as their heirs have granted to Mrs. Fulton that is vested in the plaintiff. As to the one-third of the south part vested in Mrs. Robinson, the Statute of Limitations is involved; her husband died in 1840, and she became single. If held adversely by Fulton as against her right by actual, continued, exclusive and adverse possession for twenty-one years, she is barred, and the right being in Fulton passed under the sheriff's sale.

"It is contended that the payment of the money to the sisters for the south half is an estoppel, preventing them from claiming the land. We think differently."

The jury found for the plaintiffs the 21 acres disclaimed by the defendants, three fifth parts of the undivided interest of Mrs. Duffield and two sixth parts of the undivided interest of Mrs. Shields in the 100 acres, and for the defendants for the remainder of the tract mentioned in the writ.

The defendants took a writ of error. The assignments of errors were, the parts of the charge of the court given above.

*E. Cowan*, for plaintiffs in error.—The Act of March 26th 1785, § 4, 2 Sm. L. 299, Purd. 653, pl. 5, allows to wife or heirs but ten years after removal of the disability; Jackson *v.* Johnson, 5 Cowen 74; Moore *v.* Jackson, 4 Wend. 58. The land was the sole property of the married women, the husbands had nothing in it when Fulton took possession in 1839: Dubbs *v.* Dubbs, 7 Casey 149; Bensell *v.* Chancellor, 5 Whart. 371; 3 Wooddeson's Lect., §§ 58, 208.

*H. P. Laird* and *H. D. Foster*, for defendants in error.—Notwithstanding the deed from the attorney in fact of the sisters,

[Henry *v*. Carson.]

Robert Fulton occupied the northern part as their tenants at will, the deed being inoperative: Smith's Landlord and Tenant 18. His possession was not adverse: Proprietors *v*. McFarland, 12 Mass. 325; Smith's Land. and Ten. 217, 218. But if his possession were adverse from 1839, the coverture suspended the running of the statute: Marple *v*. Myers, 2 Jones 122; Gernet *v*. Lynn, 7 Casey 94; Moore *v*. Luce, 5 Id. 260; Crow *v*. Kightlinger, 1 Id. 343.

The opinion of the court was delivered, October 28th 1869, by
WILLIAMS, J.—The main question presented by the assignments of error in this case is, was the right of the children and heirs at law of Elizabeth Duffield and Isabella Shields, under whom the plaintiff below claimed title to the land in controversy, barred by the Statute of Limitations? The adverse possession, set up by the defendants as a bar to the ejectment, began on the 3d of April 1839, and continued without interruption until the 18th of April 1866, when the writ in this case was issued. When the adverse possession commenced, both Elizabeth Duffield and Isabella Shields were under coverture. The former died in 1845 and her husband in 1846; the latter in 1848 and her husband in 1851. If the heirs were severally entitled to twenty-one years after the death of the respective husbands, who were tenants by the curtesy, in which to bring their ejectment, then their right of action was not barred, and the court rightly instructed the jury that the plaintiff was entitled to recover the interests conveyed to her by their deeds. But if they were only entitled to the same time in which to bring their action, that the wives would severally have had, if they had survived their respective husbands, then their right of action was barred, and the court erred in the instruction given to the jury. Had then the heirs twenty-one years after the death of their ancestors' husbands in which to bring their action, or were they bound to bring it in ten years after their death, if at the expiration thereof the adverse possession of the defendants had continued for twenty-one years? This depends on the true construction of the Act of 26th March 1785, for the limitation of actions. The 2d section provides that "from henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, her or their right or title to the same first descended or accrued; nor shall any person or persons whatsoever have or maintain any writ of right or any other real or possessory writ or action, for any manors, lands, tenements or hereditaments of the seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-one years next before such writ, action or suit so hereafter to be sued, commenced or brought." If the act stopped

[Henry v. Carson.]

here, the right of all persons without respect to their age or condition to make entry into any manors, lands, tenements or hereditaments, or to bring action therefor, would be absolutely barred by twenty-one years' adverse possession. But the 4th section enlarges the time for making the entry or bringing the action in favor of persons under any of the disabilities mentioned therein, when their right or title first descends or accrues, and extends it for the term of ten years after the removal of the disability, notwithstanding the twenty-one years may have expired. The first clause of the section provides "that if any person or persons * * shall be at the time such right or title first descended or accrued within the age of twenty-one years, feme covert, non compos mentis (or) imprisoned, then such person or persons and *the heir or heirs of such person or persons*, shall and may notwithstanding the said twenty-one years be expired, bring his or their action or make his or their entry, as he, she or they might have done before the passing of this act, so as such person or persons or *the heir or heirs of such person or persons*, shall within ten years next after attaining full age, discoverture, soundness of mind (or) enlargement out of prison, take benefit of or sue for the same, and no time after the said ten years." This clause is substantially the same as the 2d section of the statute 21 Jac. 1, cap. 16, with the exception that in the latter, the words "or death" are inserted immediately before the phrase "take benefit of and sue for the same," &c.

There can be little or no doubt in regard to its meaning when construed in connection with the restraining provisions of the 2d section. Its purpose, as already intimated, was to enlarge the time limited therein for bringing the action or making the entry in favor of all such persons as might be under disability when their right or title first descended or accrued; and accordingly it provides that such persons may bring their action or make their entry within ten years after the removal of the disability, notwithstanding the twenty-one years' limitation may have expired before its removal; and in the event of their death after the removal of the disability, that their heirs shall have the same time for bringing the action or making the entry as they themselves would have had, if they had lived. In other words, it allows to all persons under disability, when their right or title first descends or accrues ten years after its removal in which to bring their action or make their entry, whatever may have been the length of time which has elapsed since the right or title first descended or accrued; and in case of their death, it gives their heirs the same time for bringing the action as they would have had if they had lived, and no longer, though the heirs may be under disability when their ancestor dies. If the ten years after the removal of the disability expire before the twenty-one years limited for

bringing the action or making the entry, the clause is inoperative, and the right to make entry or bring the action will not be barred till the latter period has expired. In no case can the right be barred by less than twenty-one years' adverse possession. This, as it seems to me, is the reasonable and proper construction of the clause.

But if a person who is under disability when his right or title first descends or accrues, dies before its removal, within what time must his heirs bring their action or make their entry in order to avoid the bar of the statute? If this contingency is not provided for in the succeeding clause of the section, then no provision is made for it, as the words " or death" in the statute of 21 Jac. 1, ch. 16, § 2, are, as we have seen, omitted in our act. But in lieu thereof we have the provision in the next clause: " And in case such person or persons shall die within the said term of ten years under any of the disabilities aforesaid, the heir or heirs of such person or persons shall have the same benefit that such person or persons could or might have had by living until the disabilities should have ceased or been removed." What is the meaning of this clause? If it were not for the phrase " within the said term of ten years," there would be no difficulty in its interpretation, or any doubt as to its meaning. The corresponding clause in the Delaware Act of June 16th 1793, which was evidently borrowed from ours, omits the phrase and avoids the difficulty. But as the clause stands in our act, giving to the language its ordinary signification, it appears to be contradictory and insensible. If we are at liberty to reject the phrase as repugnant to the general and evident purpose and intent of the whole clause, its meaning is obvious. It gives to the heirs of a person dying under disability the same time in which to bring their action or make their entry as their ancestors would have had, if they had lived until the disability had ceased or been removed. But we are not at liberty to reject the phrase if we can possibly give it such a construction as will make it consistent with the residue of the clause and with its manifest purpose and intent. We cannot give it such a construction unless we interpret the preposition " within" as referring and applying not to the time included in " the said term of ten years," but to the time intervening between the disseisin and the removal of the disability, when " the said term" commences. Thus interpreting it, the clause will read: " and in case such person or persons shall die *within,* that is to say, inside of, not overstepping, before the commencement of the said term of ten years, under any of the disabilities aforesaid, the heir or heirs of such person or persons shall have the same benefit," &c. If this is not the ordinary and proper meaning of the preposition " within," it is the meaning which the context requires, and the only one of which it is susceptible, if the phrase is retained. If we

[Henry v. Carson.]

interpret it according to its ordinary meaning and usage, the clause is contradictory and insensible. If it is to be understood as meaning literally *within* the said term, that is, *during its continuance*, then the clause is not only absurd, but it involves an impossibility. How can a person die " within the said term of ten years under any of the disabilities aforesaid," when the term does not commence until after the disabilities have ceased or been removed ? And what sense is there in providing that " the heirs shall have the same benefit" that their ancestor " might have had by living until the disabilities should have ceased or been removed," if they have ceased or been removed when the ancestor dies ? The contradiction and the absurdity involved, if the phrase is to be literally interpreted, are too manifest to admit or require further argument. To give the clause then a sensible meaning, we must interpret the phrase as suggested or we must reject it altogether, and in either alternative we are brought to the same conclusion as to its meaning, viz. : that it was intended to give the heirs of a person dying under disability the same benefit that the ancestor would have had if he had lived until its removal.

In support of this construction we have the authority of Tilghman, C. J., in Thompson and others *v.* Smith, 7 S. & R. 209, where he says : " Our Act of Assembly is indeed not clearly or accurately expressed, when it speaks of persons dying under a disability *within* ten years. But the meaning is that if the title first descends or accrues to a person under disability, and that person dies before the disability cease or be removed, his heir, whatever may be his condition as to ability or disability, shall have the same benefit that he himself might have had by living until the disability had ceased, that is to say, he shall have ten years from the death of his ancestor ; but if. the person to whom the title first descends or accrues, being then under disability, shall live till the disability cease, then ten years and no more shall be allowed to him and his heirs, in case he shall die within the ten years." In saying that the heir " shall have ten years from the death of his ancestor," he evidently refers to a case where the heir has an immediate right of entry, and not to a case where the right of entry or action is suspended by the intervention of a particular estate.

Substantially the same construction has been given to the British statute 21 James 1, already referred to, and to similar statutes in some of the states of our Union, as the following cases will show : Doe d. George and Wife *v.* Jesson, 6 East 81 ; Demarest *v.* Wynkoop, 3 Johns. Ch. R. 136 ; Jackson *v.* Johnston, 5 Cowen 74 ; Moore *v.* Jackson, 4 Wend. 58 ; Carpenter *v.* Schermerhorn, 2 Barb. Ch. Rep. 314 ; Lewis *v.* Marshall, 5 Pet.

470; Sicard *v.* Davis, 6 Id. 124; Thorp *v.* Raymond, 16 Howard 247; Tillinghast's Adams's Eject. 58.

In Doe ex dem. George and Wife *v.* Jesson, the ancestor died seised of the premises, leaving a son and daughter, infants, and on the ancestor's death a stranger entered, and the son soon after went to sea and died abroad within age; and in ejectment brought by the daughter, the plaintiff's lessor, as heir of her brother, Lawrence, J., said: "Upon the death of the father, Thomas Jesson, the right descended to John, the son, then under age, who died under that disability. The lessor, Frances, is the heir of John, and the statute gives to the party to whom a right of entry accrues, and who is under disability at the time, ten years after the disability is removed, notwithstanding the twenty years should have elapsed after his title first accrued; and to his *heir* the statute gives ten years after the death of such party dying under the disability. It was accordingly held, that as the ejectment was not brought until more than ten years after the death of the brother, and more than twenty years after adverse possession was taken, that the plaintiff was not entitled to recover."

In Jackson *v.* Johnson, a case involving the construction of the New York statute, adverse possession had been taken of the land of an infant and *feme covert* in 1793. She became of age in 1796, and died in 1797, leaving her husband and a son and a daughter, the plaintiff's lessor, surviving. The son died in 1816, and the husband in 1817, and the daughter brought ejectment in 1825. It was held that as the plaintiff's mother was under the disability both of infancy and coverture when the adverse possession commenced, she or her heirs should have ten years after the removal of her disabilities, and at least twenty years after the adverse possession commenced, within which to enter or bring ejectment, and that as the husband's tenancy by the curtesy suspended the right of entry or action of her heirs, the plaintiff had ten years within which to bring ejectment, after the estate by the curtesy terminated by the death of the father in 1817. The doctrine of that case is that the disability which entitles a party to the benefit of *the proviso* in the statute, must exist when the right of entry or action first accrues; and if several disabilities exist together in the owner of an estate, as infancy and coverture, when the adverse possession commences against her, she, or, if she die, her heirs, have at least ten years within which to enter or bring an action, after both disabilities are removed, and they are entitled to full twenty years for this purpose from the time when the adverse possession commenced; and though these disabilities be removed, if the right of entry or ejectment be suspended by the intervention of a particular estate, existing at the time of their removal, as a tenancy by the curtesy *initiate* during their existence and *consummate eo instanti* that they determine,

the heirs still have ten years to enter or bring ejectment after the particular estate is determined.

In Sicard v. Davis, a case arising under the Kentucky statute, Marshall, C. J., in delivering the opinion of the court says: "The construction of the act,—that if adverse possession be taken in the lifetime of the ancestor, and be continued for twenty years, and for ten years after the death of the ancestor, no entry being made by the ancestor or those claiming under him, the title is barred,—is established by the decisions of this court as well as the courts of Kentucky; 4 Wheat. 213."

The uniform doctrine of the cases cited, as will be found on examination, is, that if twenty years have elapsed since the right of action accrued, and ten of those years have been free from disability, the right of entry is barred; in other words, the owner is not entitled to twenty years after the disability ceases within which to bring his action; but to ten years only if, at the expiration of the latter period, twenty years have elapsed since the right of entry or action first accrued, and if the owner dies, the heirs, if under disability, have no longer time for bringing the action or making the entry than he would have had if he had lived. This is also the construction given to our own act in Carlisle v. Stitler, 1 Penna. Rep. 8, where it is said that the infant child of a woman who dies covert, can have no longer period than its mother would have had if she had survived her husband. So, in Bensell v. Chancellor, 5 Wh. 371, the decision is in conformity with this interpretation of the statute.

But it is insisted that a different construction was given to the act in Marple v. Myers, 2 Jones 122, and that it was there decided that where adverse possession is taken of the land of a married woman, and she dies under the disability of coverture, the heirs have twenty-one years, and not ten years only, in which to bring ejectment, after the termination of the husband's estate as tenant by the curtesy. It may perhaps be difficult to reconcile the language used by the judge who delivered the opinion of the court in announcing the conclusion to which he was brought by his argument, and to show its consistency with what we regard as the proper construction of the act. But whatever the difficulty in this respect, he nowhere declares in terms that the heirs of a feme covert dying under disability are entitled to twenty-one years after the death of her husband in which to bring their action. Nor under the facts of the case was it necessary for him to do this in order to justify the decision of the court. He does indeed say: "By the death and conveyance of the tenant by the curtesy, a new right was acquired which was untouched because not embraced by the Act of Limitations; for every new right of entry confers an additional period within which it may be exercised." But what is the additional period which this new right .

9 P. F. Smith—20

[Henry *v.* Carson.]

of entry, so called, confers? Is it twenty-one, or ten years? Why may not the latter have been intended, as this is the period given by the act? If the adverse possession which was there set up as a bar to the action had commenced after the death of the wife and during the existence of the husband's estate as tenant by the curtesy, there would be no difficulty in saying, that as the heirs in that event would be entitled to twenty-one years after the death of the husband in which to bring their action, that twenty-one years must have been the additional period intended. But as the adverse possession began in the lifetime of the wife, and as the heirs' right of action would have been barred but for the additional period allowed by the enlarging provisions of the act, may it not be reasonably inferred that this was the additional period intended? Is there anything in the facts of the case which forbids such an inference? The adverse possession began in 1821, the wife died in 1827, and her husband in 1835; the action was brought on the 11th of March 1845, within ten years after his death unless he died before the 11th of March 1835, which does not appear either in the history of the case or in the opinion of the court. But what is intended, by "the new right" which the heirs acquired by the death of the tenant by the curtesy? Was it a right independent of or under the statute? Was it the same right of entry the heirs would have had if the adverse possession had commenced after the death of the wife during the existence of the husband's tenancy by the curtesy? Or, was it the right of entry which the heirs would have had on the death of the wife, if it had not been for the husband's estate as tenant by the curtesy, and which was suspended during its existence? Clearly the latter must have been intended, as a brief quotation from the argument will show: "Yet, had an immediate right of entry descended upon the plaintiffs and Mrs. Strause as the heirs of their respective mothers, they would have been put to their several actions for the recovery of the possession within the ten years given by the act. But in both cases a precedent estate for life vested in their respective fathers, and intervening between the mothers and their children, suspended the latter's right of entry until the respective particular estates were expended by the death of the tenant or a merger of his interest." But why call it a *new right*, unless it be for the reason that it did not enure until the termination of the husband's estate as tenant by the curtesy? Before his death it had no existence. Immediately upon his death it accrued. In this sense, and in this sense only, was it a new right. It was a right under, not independent of the statute. If it was untouched because not embraced by the Act of Limitations, it was untouched in no other sense, than that being suspended by the intervention of the husband's particular estate, it was not affected during its existence by the limitation of the restraining

[Henry v. Carson.]

or enlarging provisions of the act. The language must be interpreted with reference to the subject under discussion. The court below ruled that the statute was a bar to the action because it had not been brought within ten years after the death of the wives in whom the title was vested; and for the purpose of making it evident that this was an erroneous construction of the statute, Judge Bell proceeds to show that the heirs' right of entry was suspended by the intervention of the husbands' estates as tenants by the curtesy, and therefore the statute did not operate during the existence of these particular estates, but upon their termination the right of entry accrued which gave an additional period for its exercise. And .this is all that was decided in Miltenberger v. Croyle, 3 Casey 170. There the plaintiffs brought ejectment in 1852, claiming the two undivided third parts of the land described in the writ as the heirs of Mary Croyle, wife of Philip Croyle. In delivering the opinion of the court, Lewis, C. J., said: "As the plaintiffs had no right of action until the death of Philip Croyle in 1850, the court was correct in holding that there was no defence under the Statute of Limitations. So far as Marple v. Myers decides that the statute does not run against husband and wife when adverse possession is taken of the wife's land during coverture, and that upon her death, the heirs, upon the transfer of the husband's estate as tenant by the curtesy, though the adverse possession may have continued for twenty-one years, are entitled to bring ejectment during the husband's lifetime, it has been directly overruled in Crow v. Kightlinger, 1 Casey 343, and in Moore v. Luce, 5 Id. 260. And if it was intended to decide that the heirs of a *feme covert*, who dies leaving a husband, have the same right of entry after his death and the same period for its exercise, where adverse possession is taken of her land during coverture, that they would, if such possession was taken after her death and before the termination of the husband's estate as tenant by the curtesy, then it cannot be sustained by any reasonable construction of the statute. If the heirs are not within the enlarging provisions of the act where there has been adverse possession for twenty-one years, then they are within its restraining provisions, and their right of entry is barred. But if they claim under the enlarging provisions of the statute, they must take them with their limitations, which give them the same time in which to bring their action that the ancestor would have had if he or she had survived the disability.

It follows from the view we have taken of the statute:—

1. That if a person is under no disability when his right or title first descends or accrues, his right of entry or action, and, if he dies, that of his heirs, will be barred by twenty-one years' continuous adverse possession.

2. If a person is under any of the disabilities mentioned in the act when his right or title first descends or accrues, he or his heirs

have ten years, after the removal of the disability, in which to make entry or bring ejectment, notwithstanding the twenty-one years may have previously expired. If the ten years after the removal of the disability expire before the twenty-one years, the right of entry or action will not be barred until the expiration of the latter period.

3. If a person under disability when his right or title first descends or accrues, dies before it has ceased or been removed, his heirs have the same time in which to make entry or bring ejectment as he himself would have had if he had survived the disability: and, therefore, the heirs of a married woman, who dies leaving a husband surviving, have the same time in which to bring an action or make entry after termination of the husband's estate as tenant by the curtesy, as the wife would have had if she had outlived her husband, viz., ten years and no longer, though they may be under disability when their right of entry accrues.

As the ejectment in this case was not brought until more than ten years after the death of the husbands of Mrs. Duffield and Mrs. Shields, and more than twenty-one years after the adverse possession commenced, the plaintiff was not entitled to recover.

Whether the plaintiff is estopped by the receipt of the purchase-money by the heirs of Mrs. Duffield after her death, we need not now consider, as the bar of the statute is fatal to her right of action.

Judgment reversed, and a *venire facias de novo* awarded.