## C. L. DOUGLAS v. GEORGE W. IRVINE.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 7, 1889—Decided May 27, 1889.
[To be reported.]

1. An entry upon land held adversely, made for the purpose of making a survey under a claim of title, will not toll the bar of the statute of limitations, unless followed by an action of ejectment brought within one year thereafter, as required by the act of April 13, 1859, P. L. 603.

2. Where the statute of limitations has commenced to run against a testator, in his lifetime, no subsequent disability,—in this case the minority of his devisees,—will arrest it; and, as the minors' possession is the possession of their father, the fact that they were living on the premises with their father, the adverse holder, is immaterial.

3. Declarations of a boy nine years old, one of the devisees, living with his father's family on the premises, that he was the owner of the land occupied by the family, are not admissible as evidence to break the continuity of the father's adverse possession.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 135 July Term 1888, Sup. Ct.; court below, No. 14 December Term 1886, C. P.

On September 13, 1886, an action of ejectment was brought by George W. Irvine against C. L. Douglas, to recover one half acre of ground in Pine Grove township. Issue.

At a second trial of the cause on February 13, 1888, the

plaintiff showed a deed from Guy C. Irvine to himself dated March 16, 1854, for 117 acres of land, embracing the land in dispute, "for and during the term of his natural life, then to his heirs, and in default of heirs to him the said party of the second part, to revert to the party of the first part." This deed was followed by testimony that after the plaintiff was married in 1857 he made his home on the property until he enlisted in the army in 1861; that he was discharged from the service about May 1, 1865, again went into personal possession of the land and continued to hold it adversely until C. L. Douglas took possession of the part in dispute about August 16, 1886.

The plaintiff having rested, the defendant showed inter alia the record of a judgment in favor of Guy C. Irvine, against George W. Irvine, process thereon and a sale of the land by the sheriff to Guy C. Irvine, the sheriff's deed duly acknowledged being dated March 6, 1860; also will of Guy C. Irvine, dated June 1, 1868, duly admitted to probate August 28, 1868, devising forty acres of the tract, including the land in dispute, to the children of George W. Irvine; also, that at the time of the testator's death said children of George W. Irvine were William, Fannie and G. C. Irvine, and they were living on the said forty acres with their father; also, deed of William Irvine dated July 6, 1886, duly recorded, conveying his interest in the forty acres, including the land in dispute, to C. L. Douglas.

Under objection and exception sealed for the plaintiff, the defendant, for the purpose of tolling the bar of the statute of limitations, if any, and to show that the devise of forty acres was set apart for the devisees and that it embraced the land in dispute, proved that in 1869, after the death of Guy C. Irvine, his executors had a survey made of the land devised, and that it embraced the land in dispute; that George W. Irvine was then living upon the land with his family.

Guy C. Irvine, Jr., called.

The defendant proposed to show by the witness "that in 1869, when the land was surveyed, William Irvine, one of the devisees in the will of Guy C. Irvine, deceased, was on the premises and in possession, and declared that he owned the land, or words to that effect."

Objected to, as incompetent and irrelevant.

By the court : We permit you to show that William Irvine was in the exclusive possession of the land. Exception.[2]

Under objection and exception sealed for the plaintiff, the defendant proved that George Nichols occupied the premises in dispute as a tenant under a lease from Guy C. Irvine from April 1, 1864, to April 1, 1865.

After other testimony tending to meet the plaintiff's testimony relating to adverse possession, the defendant rested.

The court, BROWN, P. J., charged the jury as follows :

It is agreed that Guy C. Irvine is the common source of title ; and that the title to the land in dispute was in him upon and before March 16, 1854. On March 16, 1854, Guy C. Irvine made a deed of 117 acres of land, more or less, in Pine Grove township, to George W. Irvine. That the 117 acres included the one half acre, or thereabouts, in the ejectment suit now trying, seems to be a fact not controverted.

The interpretation of written contracts, written instruments and deeds and their legal effect, is exclusively for the court ; and we say to you that the deed of Guy C. Irvine of March 16, 1854, vested an absolute fee simple title to the land, in the plaintiff, George W. Irvine. On August 12, 1858, Sloan, Chase & Co. entered in this court a judgment that had been previously obtained before a justice of the peace. . . . . . Although the question is for you, the conclusion appears to me to be irresistible, that the note on which the judgment of Sloan, Chase & Co. was entered by the justice, and the transcript entered in this court, is the very same note given in evidence by the defendant. If this is so, then we say to you that the sale of the 117 acres upon the judgment of Sloan, Chase & Co., and the deed therefor to Guy C. Irvine on March 6, 1860, divested all the title of George W. Irvine, and put the title back again in Guy C. Irvine, as of that date.

It appears, that after such sale, George W. Irvine continued to occupy the land, as he claims, from the sheriff sale to the time when the defendant, Douglas, took possession of the land in dispute, in the summer of 1886 ; that the plaintiff continued to use and occupy the place after the sheriff sale, and for the length of time that would make a good title under the statute of limitations, if there was no evidence showing or qualifying

the character of the possession to be such that a title could not be acquired under the statute of limitations. This brings to the material and the controlling question of fact in this case. you

Although the case has taken a long time in the trial, and many questions that to us appear to be collateral to the main one have been discussed, it narrows down to a single question of fact, viz.: after the sheriff sale of Guy C. Irvine, in 1860, did George W. Irvine hold and occupy the land adverse to and in hostility to Guy C. Irvine, and in his own right as owner; or, did he so hold under and by the permission of Guy C. Irvine. If he occupied it as owner, and in hostility to the rights of Guy C. Irvine, for the full time of twenty-one years before Mr. Douglas took possession, then he has a good title, and the verdict should be in his favor. On the other hand, if the evidence satisfies you that his occupancy was under Guy C. Irvine, that is, by his permission, then George W. Irvine would acquire no title by the statute of limitations. In order to acquire title by the statute of limitations, the holding must be hostile to the owner, and not under and in subservience to his title.

Now you have the whole question before you.

[During the progress of the trial, certain evidence was admitted that it is proper for you to discard entirely from your deliberations. The evidence of a survey made by the executors of Guy C. Irvine in 1869, or thereabouts, to set aside forty acres to the children of George W. Irvine, we say to you was not such an entry as would toll the running of the statute of limitations.] [1] [We say to you that the statute commenced running in the lifetime of Guy C. Irvine, and it would continue notwithstanding the minority of George W. Irvine's children.] [4] [The evidence of the lease to Nichols, by Guy C. Irvine, and the occupation by Nichols, under Guy C. Irvine from April 1, 1864, to April 1, 1865, if there was such an occupation, is of no account and you will discard it entirely from your deliberations.] [3]

Then we come back to the one question that I have endeavored to bring clearly before you. As showing that the claim of the defendant, that the plaintiff claimed under Guy C. Irvine, you have the testimony of Mrs. Bachop. On the

other hand, you have the testimony of Mr. Irvine as to his claim. You will determine the question, as I have stated it from the testimony as best you can.

The jury returned a verdict for the plaintiff for the land in dispute. A rule for a new trial having been discharged, the defendant took this writ, assigning as error :

1. The part of the charge included in [ ].[1]
2. The refusal of defendant's offer.[2]
3. The part of the charge included in [ ][3]
4. The part of the charge included in [ ][4]

*Mr. W. M. Lindsey* and *Mr. W. E. Rice*, for the plaintiff in error :

1. On the authority of Altemas v. Campbell, 9 W. 28 ; Miller v. Shaw, 7 S. & R. 129 ; Ingersoll v. Lewis, 11 Pa. 212 ; Hood v. Hood, 25 Pa. 417 ; McCombs v. Rowan, 59 Pa. 414, it was error for the court to take from the jury the consideration of the evidence of entry by the executors of Guy C. Irvine, and the survey made by them : if believed by the jury, the entry was sufficient to toll the statute. Under the admitted facts in the case, the devisees being in possession, it was not necessary that an action of ejectment should have been brought within a year after the entry. The defendant's offer to prove that at the time of the entry and survey, William Irvine, one of the devisees, was there on the premises and in possession and declared his ownership, was competent to show the intention of the entry and a declaration of dominion over the land ; to require evidence of exclusive possession was manifest error.

2. The court should not have taken from the jury the evidence of the lease to Nichols by Guy C. Irvine, and the occupancy by him as tenant under Guy C. Irvine from April 1, 1864, to April 1, 1865 ; because it gave the possession to Guy C. Irvine after his purchase at the sheriff's sale, and because there was evidence to show that George did not get back into possession until after his return from the army. Again ; the part of the charge of the court in these words : " We say to you, that the statute commenced running in the lifetime of Guy C. Irvine, and it would continue notwithstanding the minority of George W. Irvine's children," took the whole case from the jury.

This statement, inadvertently made, left nothing for the jury to do but to render a verdict in favor of the plaintiff.

*Mr. J. H. Donly* (with him *Mr. H. H. Goucher*), for the defendant in error:

1. Under the act of April 13, 1859, P. L. 603: "No entry upon lands shall arrest the running of the statute of limitations, unless an action of ejectment be commenced therefor within one year thereafter." There was no evidence that this alleged entry in 1859 was followed up by an ejectment within one year, or at any time. Under the finding of the jury that the plaintiff's possession was adverse, the fact that the devisees of Guy C. Irvine, children of George W. Irvine, were already in possession, did not relieve them from a strict compliance with the act. That one may have such possession as will make title even as against the right of one dwelling in his household, is shown by the case of Moreland v. Moreland, 121 Pa. 578.

2. In 1869 William Irvine, as appeared from the evidence, was nine years old. The offer embraced in the second assignment of error, was to show that when the executors made the survey, this lad "was on the premises and in possession and declared he owned the land." If a minor child, residing at home, can by such declarations prevent his father from acquiring title under the statute, the only children a man can afford to rear are mutes. When the statute has commenced to run against a man in his lifetime, he cannot stop it by devising his claim of right to the minor children of the adverse possessor; no subsequent disability will stop it: Lynch v. Cox, 23 Pa. 265; Henry v. Carson, 59 Pa. 307.

3. George W. Irvine's possession commenced either in May or June 1865, and continued until the defendant entered on or about August 16, 1886, a period of over 21 years. Hence, the only controverted question before the jury was the character of that possession whether adverse or subservient to Guy C. Irvine's title, and upon this question the possession by Nichols, before the possession on which George W. Irvine relied, could shed no light. Nor was the jury misled by the court, in the use of the language referred to in the fourth assignment of error, because the court assumed just what the defendant's counsel were themselves assuming, to wit: that the statute had begun to run and

was interrupted by Guy C. Irvine's death, the subsequent entry by his executors, and the minority of his devisees, which position the court rightly denied.

PER CURIAM:

If we take the isolated portions of the charge embraced in the first, third and fourth specification of error, and sever their connection from the charge as a whole, we might, perhaps, discover slight error. This is well illustrated by the fourth specification, where complaint is made that the learned judge instructed the jury that, " We say to you that the statute commenced running in the lifetime of Guy C. Irvine, and it would continue notwithstanding the minority of George W. Irvine's children." An examination of the charge shows that the learned judge used this language in reference to the question that he was discussing and which he submitted to the jury, viz.: whether George W. Irvine was holding and occupying the land adversely to Guy C. Irvine and in his own right as owner, and by the instruction complained of he intended, and it must have been so understood by the jury, that if he was so holding adversely, the statute commenced to run in the lifetime of Guy C. Irvine, notwithstanding the minority of the children of the said George W. Irvine. So understood the charge was free from error.

The first and second specifications are without merit. As regards the first, it is sufficient to say that the survey made by the executors of Guy C. Irvine in 1869, was not such an entry as would toll the statute. It was not followed up by an ejectment within one year, as required by the act of April 13, 1859, P. L. 603. The verdict of the jury establishes the fact that the statute commenced to run in the lifetime of Guy C. Irvine. When the statute has commenced to run, no subsequent disability will stop it: Lynch v. Cox, 23 Pa. 265; Henry v. Carson, 59 Pa. 307. It is therefore clear that the alleged entry, to have been of any avail, should have been followed up by an ejectment within one year thereafter, even though the parties in whose interest the entry was made were minors. The fact that the latter were living with their father on the premises, is not material. They had no legal possession of the premises. Their possession was the possession of their father. The court

in rejecting the offer of evidence referred to in the second assignment, granted permission to the defendant to prove that William Irvine, one of the devisees under the will of Guy C. Irvine, was in the exclusive possession of the land. This of course could not be done, as he was a mere boy living with his father. It would be a singular circumstance if this boy could break the continuity of his father's adverse possession by a declaration of this kind.

Judgment affirmed.